T.C. Summary Opinion 2008-64

UNITED STATES TAX COURT

ORRIN LEIGH GROVER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1239-06S.                    Filed June 9, 2008.

Orrin Leigh Grover, pro se.

Kelly A. Blaine, for respondent.

GERBER, Judge:  This case was heard pursuant to the

provisions of section 7463[1] of the Internal Revenue Code in

effect when the petition was filed.  Pursuant to section 7463(b),

the decision to be entered is not reviewable by any other court,

---

[1] Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for 2002, the taxable year in
issue, and all Rule references are to the Tax Court Rules of
Practice and Procedure.

and this opinion shall not be treated as precedent for any other case.  Respondent determined a $5,983 income tax deficiency for petitioner's 2002 tax year and also determined additions to tax as follows:  $1,346.17 under section 6651(a)(1), $837.62 under section 6651(a)(2), and $199.91 under section 6654(a).

Petitioner failed to file a return for 2002, and the deficiency was attributed to unreported income.  Following the deficiency determination, petitioner provided respondent with income figures and business and personal expenses in excess of the income.  The issues we consider involve whether petitioner has shown that respondent's income tax deficiency determination is excessive and whether petitioner is liable for the additions to tax.[2]

## Background

Some of the facts have been stipulated and are incorporated by this reference.  Petitioner, Orrin Grover, was a resident of Oregon at the time his petition was filed.  Petitioner, an attorney, practiced law under the name Orrin L. Grover, P.C., an Oregon professional corporation formed in 1984 which is an

---

[2] Petitioner's income and deduction information was provided to respondent after the issuance of the deficiency notice and late in the administrative process.  That information was not subjected to audit and not agreed to by respondent in the form presented by petitioner.  We are treating petitioner's information as an alternative computation approach that has substance only to the extent proven at trial.

S corporation for Federal tax purposes. Petitioner was licensed to practice law in the States of California and Oregon.

Petitioner's legal speciality has been the representation of healthcare facilities, and his clients were spread over a broad geographical region, including the States of Washington, Idaho, Oregon, Nevada, California, Arizona, Texas, and Colorado. Most of petitioner's clients, during 2002, were in Oregon and California, with the latter State representing approximately 80 percent of his business.

Petitioner and his wife owned a building in Woodburn, Oregon, from which he operated his law practice. During 2002 his practice was to work 3 or 4 days per week in California, (mainly in San Francisco) and 1 or 2 days in his Oregon office. During 2002 petitioner spent 205 days in California, where he maintained a satellite office in San Francisco. About 90 percent of his business records were maintained in his Oregon office, and the remaining 10 percent were in San Francisco. Petitioner claimed travel and meals expenses while he was away from his Oregon office. Petitioner did not maintain formal books and records of his income and deductions and derived his claimed deductions from underlying source material like invoices, summary records (credit card bills and receipts), and collateral documentation (frequent flyer records).

Petitioner and his wife did not file an individual or a joint Federal income tax return for 2002. Respondent determined petitioner's income and his 2002 deficiency from Forms 1099 received from payors. In connection with the pretrial development of this case, petitioner submitted prepared-after-the-fact 2002 tax returns. In particular he prepared a Form 1120S, U.S. Income Tax Return for an S Corporation, Orrin L. Grover, P.C., and a joint Form 1040, U.S. Individual Income Tax Return, for his and his wife's 2002 tax year.[3] In the Form 1120S petitioner represented his 2002 income from the practice of law, along the lines of the following summary (Amounts are rounded for reporting purposes.):

| | | |
|---|---:|---:|
| Income | | $125,408 |
| Expenses: | | |
| Rent California office | $18,000.00 | |
| Oregon office payment | 6,300.00 | |
| Dues | 1,000.00 | |
| Employee benefits: | | |
| Health insurance | 6,883.28 | |
| Employee drug benefit | | |
| Bimart | 599.62 | |
| Fairway | 960.00 | |
| Employee copays | 100.00 | |
| Medical/dental | 2,252.50 | |
| Travel expense: | | |
| Airfare | 8,223.58 | |
| Airport shuttle/parking | 1,045.00 | |
| Oakland airport parking | 1,120.00 | |
| Additional shuttle | 1,550.00 | |
| Car rental | 916.51 | |

---

[3] We note that Mr. Grover is the sole petitioner in this case and that the document submitted to respondent after the issuance of the notice of deficiency and before the institution of this case has not been treated by the parties as a filed return for purposes of this controversy.

Per diem travel expense:

| | | |
|---|---|---|
| Meals | 9,430.00 | |
| California auto expense | 4,317.02 | |
| Miscellaneous travel | 3,075.20 | |
| Other office expense | 44,911.02 | |
| Additional expenses | 17,505.95 | |
| Total deductions | | 128,189.00 |
| Net loss from practice of law | | (2,781.00) |

On the draft Form 1040 petitioner reported the pass-through loss of $2,781 and offset that amount against $8,500 of net income reported. The reported income on the Form 1040 consisted of $10,000 from his wife's consultant fee from Orrin L. Grover, P.C., and $6,300 of her income from rentals less $7,800 of rental expense. After accounting for exemptions and other miscellaneous deductions, petitioner reflected no taxable income and a $1,201 employment tax liability for his own and his wife's joint 2002 tax year. For convenience, we address each of petitioner's claimed deductions under a separate heading.

## Discussion

### Travel, Meals and Miscellaneous Expenses[4]

Petitioner claimed the following amounts for 2002:

| Purpose | Amount |
|---|---|
| Airfare | $8,223.58 |
| Shuttle and parking | 1,045.00 |
| Airport limo | 1,550.00 |
| Car rental | 916.51 |
| Airport parking | 1,120.00 |
| Meals expense | 9,430.00 |
| Miscellaneous travel | 3,075.00 |
| Total claimed | 25,360.09 |

---

[4] No question was raised concerning the burden with respect to the claimed deductions.

Respondent agrees that amounts claimed for airfare, shuttle and parking, airport limo, and car rental were expended but argues that petitioner is not entitled to a deduction because the travel was nondeductible commuting or not shown to have been incurred for business purposes. With respect to the $1,120 claimed for airport parking respondent contends that it is also not deductible because petitioner did not provide any supporting evidence. The amounts claimed for meals and miscellaneous travel are on a per diem basis, and respondent contends that the amounts are nondeductible because petitioner was not away from home on business.

To be deductible, travel expenses must be reasonable and necessary and incurred while away from home in the pursuit of business. Commissioner v. Flowers, 326 U.S. 465 (1946). Respondent argues that petitioner failed to meet only one aspect of the above-stated requirements for a deduction. Respondent contends that petitioner did not incur the expenditure in pursuit of business. Respondent does not challenge whether petitioner was "away from home" when in California; instead, respondent questions only the business purpose for the expenditures. Respondent also argues that petitioner failed to meet substantiation requirements with respect to certain of the claimed deductions. Although petitioner spends a great deal of time in California, his specialized practice causes him to travel to several States. In addition, his law offices are in Oregon

and California, and as much as 20 percent of his revenue was earned outside of California. Petitioner maintains approximately 80 percent of his business records in Oregon. There is an obvious and direct business purpose in this case for incurring the travel expenses--to earn income. Accordingly, we find that petitioner would be entitled to deduct his travel expenses to the extent he has met substantiation requirements.

Respondent also argues that petitioner's choice to remain in Oregon was a personal one, but we find that argument, in the setting of this case, does not ring true. Petitioner has business activity in several States, and during 2002 there was a heavy concentration of activity in California. The principal place of his legal operation was Oregon where he maintained an office with most of his records. In effect, respondent's argument is that petitioner has no tax home. On the record here, we reject that approach and find that petitioner's business travel to and expenses incurred in California were "away from home" expenses.

Finally, respondent contends that petitioner did not maintain adequate records so as to be able to deduct the travel expenses. In that regard, section 274(d) provides for a higher standard of substantiation for certain business expenses. Generally, a taxpayer must substantiate expenditures "by adequate records or by sufficient evidence corroborating his own

statement." Sec. 1.274-5T(c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

With respect to the airfare ($8,223.58), shuttle and parking ($1,045), airport limo ($1,550), and car rental ($916.51), petitioner provided documentary evidence, supplemented by his testimony, to provide sufficient information to meet the threshold for the statutory substantiation requirements. We accordingly hold that petitioner is entitled to deductions for airfare ($8,223.58), shuttle and parking ($1,045), airport limo ($1,550), and car rental ($916.51).

With respect to the airport parking ($1,120), meals expense ($9,430), and miscellaneous travel ($3,075), petitioner employed a per diem basis using 205 days in California as the multiplier times daily expenditure amounts for parking, meals, and travel. The parking is based on daily cost, whereas petitioner explained that the meals and miscellaneous expenses are based on the established allowances to Federal Government employees. Respondent makes the general arguments that petitioner is not entitled to deduct business expenses while in California and that he has failed to substantiate the amounts claimed. Respondent, however, has not questioned petitioner's method of computation and his use of the per diem approach.

Under section 274, the Commissioner is authorized to prescribe rules under which optional methods of computing expenses, including per diem allowances for ordinary and

necessary expenses for traveling away from home, may be regarded as satisfying the substantiation requirements of section 274(d). Sec. 1.274-5(j), Income Tax Regs. Under this authority, the Commissioner issued Rev. Proc. 2001-47, 2001-2 C.B. 332 (applicable to petitioner's travel January through September 2002), and Rev. Proc. 2002-63, 2002-2 C.B. 691 (applicable to petitioner's travel October 2002 through October 2003).

Under those revenue procedures, taxpayers may elect to use, in lieu of substantiating actual expenses, certain authorized methods for deemed substantiation of employee lodging, meal, and incidental expenses incurred while traveling away from home. The procedures include an optional method for use by self-employed individuals who pay or incur meal costs to compute deductible costs of business meals and incidental expenses paid or incurred while traveling away from home.

Petitioner has not offered any evidence showing that he incurred the daily $7 parking expense or that the cost is $7. Therefore, we hold that he is not entitled to the $1,120 claimed for airport parking. With respect to the $9,430 claimed as per diem meal expense, we hold that petitioner is entitled to use the alternative method and that he is therefore entitled to claim a $9,430 deduction.[5] Concerning the $3,075 of miscellaneous

---

[5] Although the meals may be subject to the 50-percent limitation of sec. 274(n)(1), the outcome of this case is the same whether the entire $9,430 or one-half of that amount would

(continued...)

expenses, petitioner has not shown that he is entitled to amounts in excess of the per diem allowance for meals and, accordingly, is not entitled to claim that amount.

Of the $25,360.09 claimed for these business expenses, petitioner is entitled to $21,165.09.

Other Claimed Expenses

Petitioner claimed the following expenses and respondent has made the following concessions:

| Item | Amount Claimed | Amount Conceded by Respondent | Amount in Dispute |
|------|------|------|------|
| Health ins. premiums | $6,883.28 | $6,883.28 | -0- |
| Telephone long distance | 3,307.90 | 3,107.90 | $200.00 |
| Additional telephone | 3,435.96 | 3,216.45 | 219.51 |
| Office supplies | [1] 4,886.31 | 309.51 | 4,576.80 |
| Contract labor | 7,438.81 | 2,270.81 | 5,168.00 |
| Wells Fargo bank charge | 4,510.00 | 784.00 | 3,726.00 |
| Drug expenses | [1] 1,559.62 | 1,559.62 | -0- |
| Medical copayment | 100.00 | 100.00 | -0- |

[1] These amounts are set forth in petitioner's brief as opposed to the proposed return submitted to respondent in connection with the pretrial activity.

_____

[5](...continued)
be allowable.  Accordingly, we need not delve into that nuance.

As the above schedule reveals, respondent has fully conceded the health insurance, drug expense, and medical copayment items. With respect to the drug expense and medical copayment items, however, respondent's concession includes the stipulation that they would be deductible only on Schedule A, Itemized Deductions, of petitioner's 2002 Form 1040 subject to the limitations imposed on such deductions. Respondent's concession that $6,883.28 is deductible on petitioner's Form 1120S is premised on a $2,065 increase in petitioner's income on his Form 1040 under section 162(l). Therefore, the net effect of this item in the context of this case is a $4,818.28 deduction.

We therefore consider the remaining four deduction items.

1. <u>Telephone</u>--Petitioner claimed $3,307.90 for telephone and respondent conceded that petitioner is entitled to $3,107.90 or $200 less than the amount claimed. The remaining $200 is represented by a check with a notation that it was for "Sprint Residential". Petitioner has not shown that the $200 was expended for a business purpose, and we hold that he is entitled to the amount conceded by respondent, $3,107.90, for business telephone for 2002.

2. <u>Office Supplies</u>--Petitioner originally claimed $5,200.36 as office expenses, and on brief he claimed the reduced amount of $4,886.31. Respondent concedes that petitioner is entitled to $309.51 of office expenses for 2002. Petitioner provided checks in support of his reduced claim of $4,886.31. Most of the checks

were made to the order of Staples, Kinkos, Yes Graphics, or Office Max.  With the exception of a $324.05 check to Yes Graphics for "Historical Research" on a book that petitioner was writing, we find the amounts set forth on the checks to the above-listed payees are deductible.  Petitioner provided five checks to "Mac Repairs" for repair of his computer and we hold the amounts are deductible.  Petitioner's checks written to the local newspaper (Woodburn Independent) in the amounts of $39.40 and $34.40 were for subrent of petitioner's office space.  Those two amounts are not deductible because the office property was either jointly owned or owned solely by petitioner's wife and it has not been shown what portion, if any, is attributable to petitioner.  Additionally, income from renting the office has not been shown to be included in respondent's determination.  Finally, petitioner provided checks written to Fry's, but he was unable to specify the items purchased and accordingly is not entitled to deduct the amounts shown on the Fry's checks as business expenses.  Overall, petitioner is entitled to deduct $4,036.03[6] for office supplies.

3.  <u>Contract Labor--Court Reporter's Fees</u>--Petitioner claimed $7,438.81 for contract labor, and respondent has conceded $2,270.81 of the amount claimed.  Of the remaining $5,168, petitioner provided evidence of the payment by check of $1,100

---

[6] This amount includes the amount of respondent's concession of $309.51.

which he has adequately identified as having been expended for fees paid to a court reporter in connection with the handling of a case. He did not, however, recall which case in particular was involved and/or whether he was reimbursed by the client. Petitioner did not provide records which would have identified whether any reimbursement he may have received had been included in the income he reported. Under those circumstances we must hold that petitioner has not shown that he is entitled to deduct $1,100 for court reporter's fees.

Several of the checks petitioner produced were identified as payments to an attorney and others who assisted petitioner in his business activity. With respect to some of those items petitioner did not have a record, nor could he recall the specific case or the assistance provided. Accordingly, petitioner has not shown entitlement to a deduction with respect to those. Concerning $2,844 paid to Alicia Charapata, petitioner explained that she worked in his office during the summer of 2002 assisting him as a secretary and file clerk. As those amounts were for general overhead and not for a specific case or client, the Court finds that it is unlikely that those amounts were reimbursed by clients, and we hold them to be deductible. Concerning all other claimed expenses, petitioner's lack of specificity and the possibility of client reimbursement, and/or the subject matter of the expense (i.e., building maintenance), render these items not deductible.

Accordingly, petitioner is entitled to $2,844 in addition to the $2,270.81 conceded by respondent for a total of $5,114.81 for contract labor for 2002.

4. <u>Wells Fargo Bank Charges</u>--Petitioner incurred $4,510 in overdraft charges in connection with his Wells Fargo Bank account. Respondent has conceded that petitioner is entitled to deduct $784 of those charges and that the remaining $3,726 is not deductible because the charges were caused by petitioner's errors and such expenditures are not reasonable. The overdraft charges for 2002 were caused because petitioner miscalculated his bank balance on 21 occasions where he wrote multiple checks and the bank charged him $32 per check because of the overdrafts. Accordingly, on the occasion of petitioner's 21 overdrafts, he was charged $21 for an average of five to six checks that caused the overdraft. Petitioner admits that it was his miscalculations that caused the overdraft.

Respondent, referencing the statute and several cases, argues that to be deductible, business expenses must be, among other things, "reasonable". The question here, therefore, is whether petitioner's actions were "reasonable". Respondent contends that the overdrafts were caused by petitioner's errors and are therefore unreasonable. It was ordinary and necessary for petitioner to maintain a bank account and to pay his business obligations by check. Clearly petitioner exhibited a lack of acumen, and the bank charges were a cost of his doing business.

In Bailey v. Commissioner, T.C. Memo. 1991-385, affd. without published opinion 968 F.2d 25 (11th Cir. 1992), this Court disallowed bank overdraft charges which in 2 of 3 years exceeded $30,000. The Court observed that "[the taxpayers] continued their practice of incurring and paying overdraft charges over a 3-year period, and the total amounts paid were substantial." The taxpayers argued that they were having financial difficulties and that they would intentionally overdraw their bank account as a substitute or alternative to borrowing funds. The Court rejected the taxpayers' argument.

Petitioner's overdraft charges were not the result of intentional acts but a lack of acumen. By comparison, the overdraft charges he incurred for 2002 were substantially less than (10 percent of) the charges in Bailey. Each business may incur some expense due to carelessness or lack of ability, and in this case we do not find the amount to be unreasonable.

Furthermore, and although we do not wish to discourage respondent from negotiating settlements and making concessions, we have some difficulty understanding why respondent thought that $784 of bank charges was acceptable and that $3,726 was not. Accordingly, we hold that petitioner is entitled to deduct $3,726 in bank charges.

Miscellaneous Expenses

Petitioner claimed the following expenses and respondent has made the following concessions:

| Item | Amount Claimed | Amount Conceded by Respondent | Amount in Dispute |
|---|---|---|---|
| Postage, FedEx UPS | $3,425.54 | $3,425.54 | -0- |
| California office utility | 671.00 | -0- | $671.00 |
| Historical book research | 824.05 | -0- | 824.05 |
| Legal research | 204.00 | 204.00 | -0- |
| Case costs and facility rental | 7,819.50 | -0- | 7,819.50 |
| California business expense | 416.38 | -0- | 416.38 |
| California office rent | 18,000.00 | -0- | 18,000.00 |
| Storage expense | 895.00 | -0- | 895.00 |
| Fax-n-file | 1,289.07 | -0- | 1,289.07 |
| Conference call fees | 450.36 | -0- | 450.36 |
| California auto | 4,317.82 | -0- | 4,317.82 |
| Costco | 400.00 | -0- | 400.00 |
| Interest paid | 9,600.00 | -0- | 9,600.00 |
| Oregon office utility | 2,027.43 | 137.00 | 1,890.43 |
| Professional dues | 1,000.00 | -0- | 1,000.00 |
| Oregon auto fuel | 605.00 | 605.00 | -0- |
| Book expense | 1,830.00 | -0- | 1,830.00 |
| Hardware and maintenance | 572.66 | -0- | 572.66 |
| Angela Grover's services | 10,000.00 | 10,000.00 | -0- |
| Bank of America charges | 1,800.00 | 1,800.00 | -0- |
| Misc. business | 1,684.00 | -0- | 1,684.00 |
| Additional California expenses | 1,100.00 | -0- | 1,100.00 |
| Kinkos | 97.63 | -0- | 97.63 |

With respect to the above-listed expenses that respondent has not conceded, respondent argues, generally, that petitioner has failed to carry his ultimate burden of persuasion. Respondent admits that petitioner may have provided documentation and testimony with respect to these items, but that he did not make argument or advocate his position on brief. We consider each item to discern and decide whether we agree with respondent's arguments.

## California Office Rent and Utility

Petitioner claimed $18,000 and $671 for rent and utilities, respectively, for his California office. Although petitioner provided checks totaling $15,700 for the rent, there is a clear pattern of $1,500 per month and regular payments. There is no question about the reasonable and necessary nature of these expenditures, and accordingly we hold that petitioner is entitled to deduct the amounts claimed.

## Historical Book Research

Petitioner claimed $824.05 for research on a book he intended to write involving World War II. Respondent argues that petitioner has not, to date, completed or published the book and has not shown any connection with the business of his legal practice. In addition, these costs may constitute capital expenditures and/or be personal because petitioner has not shown his intent in connection with this book. Accordingly, we hold that petitioner is not entitled to claim the $824.05 deduction.

## Case Costs and Facility Rental, Legal Research, Fax-n-file, and Conference Call Fees

Petitioner claimed case costs and facility rental, legal research, Fax-n-file, and conference call fees in the amounts of $7,819.50, $204.00, $1,289.07, and $450.36, respectively.  With respect to each claimed deduction petitioner produced checks evidencing payment of the amounts.  Respondent, among other arguments, contends that these types of expenses are normally passed on to clients as reimbursable expenditures made on the client's behalf.  Petitioner's failure to keep adequate records of such things limits his ability to show whether these items were reimbursed by clients and/or whether they were included in the income figure petitioner presented.  Accordingly, we must hold that petitioner is not entitled to deduct $7,819.50, $204.00, $1,289.07, and $450.36, respectively.  We note that petitioner's failure to keep adequate records was of his own doing and the sole cause of this seemingly harsh result.

## California Business Expense, Storage Expense, Oregon Office Utilities

Petitioner claimed California business expense, storage expense, and Oregon office utilities of $416.38, $895, and $2,027.43, respectively.  With respect to each claimed deduction petitioner produced checks evidencing payment of the amounts. Unlike the items claimed that are reimbursable by clients, these items are part of petitioner's business overhead.  Accordingly

we hold that petitioner is entitled to deduct $416.38, $895.00, and $2,027.43, respectively.

Interest Paid

Petitioner claimed $9,600 as interest paid on his Oregon office property.  In addition to a mathematical error under which the $9,600 was overstated by $3,300, petitioner did not provide substantiation of this amount.  Even if petitioner had provided substantiation, the real property was owned either by or jointly with petitioner's wife.  Because petitioner and his wife did not file a joint return and without more information, it would be impossible to allocate the income and expenses even if petitioner had provided sufficient substantiation of the amounts.  For those reasons, we hold that petitioner is not entitled to the $9,600 deduction for interest.

California Auto, Costco, Professional Dues, Book Expense, Hardware and Maintenance, Miscellaneous Business, Additional California Expenses, and Kinkos

Petitioner claimed deductions for California Auto, Costco, professional dues, book expense, hardware and maintenance, miscellaneous business, additional California expenses, and Kinkos of $4,317.82, $400, $1,000, $1,830, $572.66, $1684, $1,100, and $97.63, respectively.  With respect to these claimed deductions, petitioner failed to provide substantiation and, essentially, made the claim based on his having reported it on the return document that he provided to respondent for purposes of this case.  In other respects, petitioner has failed to

provide the business purpose with respect these items. Accordingly, petitioner is not entitled to deduct amounts of $4,317.82, $400, $1,000, $1,830, $572.66, $1,684, $1,100, and $97.63, respectively.

Summary of Adjustments

The purpose of going through each of petitioner's claimed deductions is to determine whether petitioner's information would result in an income tax deficiency smaller than the $5,903 determined by respondent. On the basis of our holdings, petitioner's income tax deficiency would not be reduced below the amount determined by respondent. In the notice of deficiency, respondent's determination of an income tax deficiency was based on total income of $26,096, which resulted in taxable income of $17,329 after considering a $3,000 personal exemption and a $3,925 standard deduction. It thus appears that petitioner has not been able to show that his income was less than the amount determined by respondent, and we accordingly hold that respondent's income tax deficiency for 2002 is sustained.[7]

---

[7] At the conclusion of trial, respondent made an oral motion to conform the pleadings (Rule 41(b)(1)) to the proof. In effect, respondent sought to have the Court use as its starting point in calculating any deficiency the income petitioner reported on the tax return submitted to respondent before trial. The record in this case does not support a finding that petitioner's income was more or less than the amount determined by respondent in the notice of deficiency. Accordingly, respondent's motion will be denied.

Additions to Tax for Failure To File, Pay, and Make Estimated Payments

Petitioner first argues that no additions to tax are due because there is no income tax deficiency. Now that the Court has decided that the income tax deficiency is to be sustained, we consider petitioner's secondary arguments. Section 7491(c) places on respondent a burden of production with respect to the additions to tax. The evidence in the record shows that no return was filed or estimates made. Accordingly, respondent has carried the burden of production with respect to the addition to tax under section 6651(a)(1).

Section 6651(a)(1) provides for an addition to tax for failure to timely file a return unless it can be shown that such failure is due to reasonable cause and not due to willful neglect. Petitioner bears the burden of proving that his failure to file was due to reasonable cause and not willful neglect. See Fischer v. Commissioner, 50 T.C. 164 (1968).

Petitioner contends that his failure to file is due to reasonable cause because his wife became ill during 2002 and the effects of that illness continued through 2002 and into subsequent years. Petitioner also contends that his 2004 illness presents a basis for reasonable cause. Petitioner contends that his wife kept his books and that he relied upon her for the information necessary to file.

Petitioner has a duty to file his return, and the extent to which the Court will treat his reliance upon others as reasonable cause for failing to meet his filing obligation is limited. United States v. Boyle, 469 U.S. 241 (1985). Petitioner, although continuing to travel regularly to California for business purposes, claims that his wife's illness impeded his ability to file a return by April 15, 2003. Although the Court sympathizes with petitioner's circumstances, his failure to file was not due to reasonable cause. We also note that several years later in 2006, when respondent sent petitioner a notice of deficiency, his tax return and/or underlying records remained unfiled/unprepared. In these circumstances we cannot accept petitioner's contention that his failure to file was for reasonable cause, and we so find. Petitioner is therefore liable for an addition to tax for failure to file his 2002 return.

Late Payment Addition to Tax

Section 6651(a)(2) provides for an addition to tax for failure to pay the amount of tax shown on a return. The addition to tax under section 6651(a)(2) applies only when an amount of tax is shown on a return. See Cabirac v. Commissioner, 120 T.C. 163, 170 (2003). Petitioner failed to file a return before the issuance of the notice of deficiency. After the issuance of the notice of deficiency petitioner submitted return documents to respondent for purposes of pretrial development of the case. The return documents were not filed, and no assessments of tax based

upon those documents were made.  Those documents were made, accordingly, not "returns" in the meaning of the statute.  Id. at 170-174.  Respondent has failed to carry his section 7491(c) burden of production; i.e., showing a "return" with unpaid balance.[8]  Accordingly, there can be no addition to tax under section 6651(a)(2) in this case for lack of an unpaid amount of tax shown on a return.

Failure To Pay Estimated Taxes

Section 6654 imposes an addition to tax for failure to pay estimated taxes.  Respondent's burden of production with respect to section 6654 is to show, at a minimum, that petitioner had a required annual payment under section 6654(d).  See Wheeler v. Commissioner, 127 T.C. 200, 212 (2006), affd. 521 F.3d 1289 (10th Cir. 2008).  In order to meet that burden, respondent must provide information about the filing of a prior year return.  Respondent contended that petitioner did not file a return for 2001, which is sufficient evidence to meet that burden.  Section 6654 does not provide for a reasonable cause exception from the addition to tax, and petitioner has not shown that he meets any of the other criteria for an exception from the addition to tax under section 6654(e).  Accordingly, petitioner is liable for the addition to tax for failure to pay estimated taxes.

---

[8] We note that there was no evidence of substitutes for returns filed under sec. 6020(b) and that the documents petitioner submitted to respondent after the issuance of the notice of deficiency reflected losses and only limited potential for tax liability.

To reflect the foregoing,

Decision will be entered

under Rule 155.